IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY a/s/o JOHN R. AND PAOLA DEBITETTO<br>One State Farm Plaza<br>Bloomington, IL 61710<br><br>Plaintiff<br><br>v.<br><br>FLUIDMASTER, INC.<br>30800 Rancho Viejo Road<br>San Juan Capistrano, CA 92675<br><br>Defendant(s) | **15 CV 3874**<br><br>Civil Action No:<br><br>**JUDGE KARAS**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, comes the Plaintiff, State Farm Fire & Casualty a/s/o John R. and Paola Debitetto (hereinafter "Plaintiff" or "State Farm" or "subrogee"), by and through undersigned counsel, hereby demands judgment against the above-named Defendant, and in support thereof complaints as follows:

## PARTIES

1. The Plaintiff, State Farm Fire & Casualty Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at One State Farm Plaza, Bloomington, Illinois and at all times material hereto was duly authorized to engage in the business of insurance in the State of New York.

1

2. At all times material hereto, State Farm provided, *inter alia*, property insurance to John R. and Paola Debitetto (hereinafter the "the Debitettos" or "subrogors") in connection with its property located at 1745 Hanover Street, Yorktown Heights, New York 10598-4609 (hereinafter the "subject property").

3. In the wake of the water loss described below, as a result of claims made on said policy (which were duly paid pursuant thereto), State Farm became subrogated to certain rights and interests of its subrogors for monies paid thereunder, including the claims giving rise to the within cause of action.

4. At all times relevant hereto, Defendant, Fluidmaster, Inc., including but not limited to all of its entities, affiliates, subsidiaries, divisions, employees, officers, directors, property managers, members, insurers, shareholders, agents and all persons or entities acting by, through, under or in concert with it, as well as all past, present and future officers, directors, stockholders, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, heirs, executors and assigns and all other persons, firms or corporations with whom Fluidmaster, Inc., has been, is now, or may hereafter be affiliated, (hereinafter, collectively, "Fluidmaster"), was, upon information and belief, a California corporation with its principal place of business located at 30800 Rancho Viejo Road, San Juan Capistrano, California, and was and is engaged in the business of designing, manufacturing, assembling, inspecting, marketing, selling and distributing water supply products, including the water supply line and plastic fitting that are at issue and are the subject of this action.

5. At all times hereinafter mentioned, Fluidmaster has been and still is a corporation that conducts business in the State of New York.

6. Fluidmaster has transacted business in the State of New York and has entered into contracts to supply goods or services in the State of New York.

7. Fluidmaster has regularly done and solicited business in the State of New York; is engaged in other persistent courses of conduct in the State of New York; has derived substantial revenue from goods sold and/or services rendered within the State of New York; and Fluidmaster has committed a tort outside the State of New York causing damage within the State of New York.

8. Defendant, Fluidmaster designed, manufactured, assembled, inspected, marketed, sold and distributed, inter alia, the water supply line and plastic fitting at issue in this case.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. §1332 in that the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.D.C. §1391(a) because the subject property is located within the Southern District of New York and the events and acts and omissions giving rise to this claim resulted in damages that occurred in the State of New York.

## STATEMENT OF FACTS

11. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

12. Prior to September 2, 2013, Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and/or placed into the stream of commerce various water supply line products and components; such as, plastic fittings; said product being intended for use by consumers for the ordinary purpose associated with water supply use (i.e. toilets).

13. Prior to September 2, 2013, a water supply line and plastic fitting ("the subject product" or "toilet connector") designed, manufactured, assembled, tested, inspected, marketed, distributed and/or placed into the stream of commerce by Defendant and was installed at the subject property.

14. Prior to September 2, 2013, Plaintiff's subrogors operated their bathroom toilet, to which the subject product was connected/installed, and used to supply water, in the normal, ordinary and intended manner. Likewise Plaintiff's subrogors used the subject product in an ordinary manner and for its intended purpose.

15. At all times material hereto, the subject product was not modified, changed, altered or abused by Plaintiff's subrogors or other users at the subject property.

16. On or about September 2, 2013, water leaked from the subject product causing water damage to Plaintiff's subrogors real and personal property, and caused other consequential and incidental damages, including clean-up costs, repair, and other associated expenses.

17. The damages sustained by Plaintiff are the direct and proximate result of the negligence and/or other liability producing conduct of Fluidmaster.

18. As a result of the aforementioned fire and damages sustained by the Plaintiff's subrogors, claims were made on the insurance policy and were duly paid by State Farm in excess of $75,000.00.

4

19. Plaintiff became subrogated to certain rights and interests of its subrogors for monies paid thereunder, including all claims giving rise to the instant cause of action.

20. Defendant Fluidmaster designed, manufactured, assembled, tested, labeled and offered for distribution and/or sale defective toilet connectors, such as the subject product, with the specific intention and purpose that these defective Toilet Connectors be installed by builders, plumbers, and consumers alike in homes, commercial properties, and other dwellings throughout the United States. In doing so, Fluidmaster represented that the toilet connectors were of superior engineering and heavy-duty craftsmanship; when in reality, they contained defects.

21. Fluidmaster knowingly failed to publicly disclose that its toilet connectors were defective, unsafe and posed a substantial risk of failure resulting in damage to property.

22. The toilet connector designed, manufactured, assembled, tested, labeled, marketed, distributed and/or sold by Fluidmaster connects a water fixture shut-off valve to a toilet. Prior to the introduction of these type of water supply connections, the connection between a water shutoff valve and a toilet required a hard pipe connection. A section of rigid metal tubing would be cut to the appropriate length with metal coupling assemblies on both ends of the tubing to connect the property's water shut-off valve to the toilet.

23. Toilet connectors, such as the subject product, eliminated the need for the customized cut necessary to fasten rigid metal tubing between the shut-off valve and toilet. Toilet connectors are manufactured in a variety of lengths (6" – 20") and made available for sale, at large, to builders, plumbers, and consumers through home do-it-yourself centers such as Home Depot or Lowes. They typically retailed for less than $10.00.

24. Initially, when first introduced to the market, the coupling assemblies on both ends of the toilet connectors were made of metal. The metal couplings connected to both the water shut-off valve and the toilet. These metal nuts were not susceptible to fracture.

25. Due to the cost associated with the materials for, and manufacture of, the metal nut, Fluidmaster replaced the toilet attachment end with cheaper plastic coupling nuts. Fluidmaster's plastic design, however, is more akin to a metal design, which fails to account for the material and behavioral differences of plastic.

26. Fluidmaster's design for the plastic coupling on toilet connectors, such as the subject product, is inadequate as it is prone to failure.

27. The toilet connector's plastic coupling nut fails to adhere to the most basic design standards in the plastics industry. When using plastics to manufacture and design parts, the plastics industry recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and performance; (b) appropriate material selection and a mold design optimized for the chosen material to achieve the functional design goal; (c) maximum functionality; and (d) optimum material usage.

28. Unlike metals, every plastic design, "must incorporate the estimated creep behavior of a particular [plastic] resin under the load and environmental conditions [the part is] expected" to be placed in. DuPont, Delrin Acetal Resin Design Guide – Module III, at 21. Failure to do so is a breach of the most basic design duties.

## COUNT I – NEGLIGENCE
## PLAINTIFF vs. FLUIDMASTER, INC.

29. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

30. Fluidmaster owed a duty of reasonable care to Plaintiff's subrogors in regard to the design, manufacture, assembly, testing, inspection, marketing and distribution, *inter alia*, of the water supply line and plastic fitting, and breached said duty.

31. The aforementioned damages were the direct and proximate result of the negligence and carelessness conduct and/or acts or omissions of Fluidmaster, by and through their employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically failing to exercise reasonable care described as follows:

   a. failing to exercise reasonable care in the following manner:

      i. failing to manufacture, assemble, sell, design, transport, distribute and/or market a properly functioning product;

      ii. failing to properly inspect and/or test the product and/or its component parts;

      iii. failing to properly determine that the product and/or its component parts were not in compliance with applicable standards;

      iv. failing to provide safe and adequate warnings or instructions with the product; and/or

      v. manufacturing, marketing, distributing and/or selling the product when Defendant knew or should have known that the product and/or its component parts would be inadequate for the reasons for which it was purchased.

   b. failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

   c. failing to adequately warn Plaintiff, Plaintiff's subrogors, and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

7

- d. failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

- e. failing to properly monitor the work of all agents and/or employees during the performance of the tasks set forth in subparagraph (a) above to ensure compliance with applicable safety procedures;

- f. failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

- g. failing to perform the tasks set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards; and/or

- h. violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

32. As a direct and proximate result of Fluidmaster's aforementioned actions, and/or omissions, Fluidmaster acted negligently or carelessly, and is therefore liable to the Plaintiff for the damages its subrogors suffered.

33. As a direct and proximate result of the aforementioned negligence and careless conduct of Fluidmaster, Plaintiff's subrogors sustained and incurred damage to their real and personal property, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses in an amount in excess of $75,000.00.

34. Plaintiff is subrogated to the rights and interests of its subrogors for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

**WHEREFORE**, Plaintiff, State Farm Fire & Casualty Company a/s/o John R. and Paola Debitetto demand judgment in their favor in an amount in excess of $75,000.00, and against

Defendant, Fluidmaster, Inc., together with the costs and disbursements of this action, and for such other and further relief as this Court deems appropriate under the circumstances.

## COUNT II – STRICT LIABILITY
## PLAINTIFF vs. FLUIDMASTER

35. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

36. Fluidmaster, at all times relevant hereto, was engaged, in the business of, among other things, designing, testing, inspecting, assembling, manufacturing and distributing water supply products, and their component parts, and specifically designed, tested, inspected, assembled, manufactured, distributed and placed into the stream of commerce the water supply line and plastic fitting at issue in this case.

37. Fluidmaster designed, manufactured, assembled, inspected, marketed, sold and distributed the subject product in a defective condition that was unreasonably dangerous, defective and unsafe to consumers and unsafe for its intended use.

38. Fluidmaster knew or should have known that the subject product would, and did, reach the subject premises without substantial change from the condition in which it was originally designed, manufactured, assembled, inspected, marketed, sold and distributed.

39. The subject product was unreasonably dangerous, defective and unsafe for its intended use and purpose. Fluidmaster is liable for the defect in the subject product and the resultant damages caused by the subject product, in that Fluidmaster:

    a. placed its product into the stream of commerce when it knew, or should have known, that through consumers' normal use of the product, the water supply line and plastic fitting would operate in such a manner so as to result in and cause a leak and present an unreasonable risk of serious injury and damage to consumers;

    b. distributed, sold and/or supplied a defectively designed and/or manufactured product which it knew, or should have known, would subject the premises to an unreasonable risk of harm;

    c. failed to properly and adequately warn and instruct as to the safe and proper use of the water supply line and plastic fitting;

    d. failed to properly and adequately assemble, inspect and/or test the water supply line and plastic fitting;

    e. designed, manufactured, distributed, sold and/or supplied the subject water line and plastic fitting in such a manner so as to render it hazardous and dangerous for its contemplated and intended use;

    f. designed, manufactured, distributed, sold and/or supplied the subject water supply line and plastic fitting without proper safety features to prevent it from being hazardous and dangerous for its contemplated and intended use;

    g. failed to warn the Plaintiff, and others of the aforesaid defective and dangerous conditions which it knew or should have known existed and created an unreasonable risk of harm to the premises;

    h. designed, manufactured, distributed, sold and/or supplied the subject water supply line and plastic fitting without proper safety devices rendering it hazardous and dangerous for its contemplated and intended use; and

    i. failed to utilize state-of-the-art technology when designing the subject water supply line and plastic fitting when the use of such technology would have eliminated the defective and dangerous conditions aforementioned.

40. The aforementioned defects of defective conditions existed at the time the subject water supply line and plastic fitting left the possession and/or control of Fluidmaster.

41. The defective, unreasonably dangerous and unsafe condition of the subject water supply line and plastic fitting as aforesaid was a direct and proximate cause of the damages sustained by Plaintiff, and Plaintiff's subrogors.

42. For these reasons, Fluidmaster is strictly liable to Plaintiff under, the applicable products liability laws of the State of New York.

43. As a direct and proximate result of the aforementioned defects, Plaintiff's subrogors sustained and incurred damage to their real and personal property, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses in an amount in excess of $75,000.00.

44. Plaintiff is subrogated to the rights and interests of its subrogors for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

**WHEREFORE**, Plaintiff, State Farm as subrogee of John R. and Paola Debitetto, demands judgment in its favor and against Defendant, Fluidmaster, Inc., together with the costs and disbursements of this action, and for such other and further relief as this Court deems appropriate under the circumstances.

## COUNT III – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### PLAINTIFF vs. FLUIDMASTER

45. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

46. Fluidmaster expressly and/or impliedly warranted that the subject water supply line and plastic fitting and its component parts were of merchantable quality, and were fit and safe for the foreseeable purpose for which the product and its component processing parts were designed, manufactured and sold.

47. The subject water supply line and plastic fitting and/or their component parts, in fact, were not of merchantable quality and were unfit and unsafe for the purposes for which they were designed, manufactured, sold and used.

48. Fluidmaster expressly and/or impliedly warranted to design, manufacture, assemble, inspect, market, sell and distribute the subject water supply line and plastic fitting in a fit, safe and operable condition for the foreseeable purposes for which it was designed, manufactured, assembled, inspected, marketed, sold and distributed and having breached all such warranties, the plaintiff sustained damages.

49. The subject water supply line and plastic fitting and its component parts were at all times used for the purpose and in the manner for which they were intended, or for which Fluidmaster could have reasonably foreseen it would be used, and the aforesaid warranties were breached by Fluidmaster.

50. The aforementioned breach of warranties were a direct and proximate cause of Plaintiff's subrogors incurring damages to their real and personal property, as well as the imposition of additional expenses and hardships.

12

51. Due to Fluidmaster breaching warranties, Plaintiff has suffered a loss in the approximate amount of not less than $75,000.00.

WHEREFORE, Plaintiff, State Farm Fire & Casualty Company a/s/o John R. and Paola Debitetto demand judgment in their favor in an amount in excess of $75,000.00, and against Defendant, Fluidmaster, Inc., together with the costs and disbursements of this action, and for such other and further relief as this Court deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, State Farm Fire & Casualty Company a/s/o John R. and Paola Debitetto, hereby demand a jury trial on any issues of fact that may be triable by a jury.

Dated: New York, New York
May 18, 2015

BY: _____
Philip A. Davolos, III
SDNY Bar Code #PD5181
pdavolos@delucalevine.com
de Luca Levine LLC
100 Church Street, 8th Floor
New York, New York 10007
(646) 837-7369
(215) 383-0082 (fax)

Attorneys for Plaintiff,
State Farm Fire & Casualty Company
a/s/o John R. and Paola Debitetto